UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ZHAN PETROSYANTS,<br>　　a/k/a "Johnny,"<br>VLADISLAV STOYANOVSKY,<br>　　a/k/a "Vlad,"<br>DMITRIY KHAVKO,<br>　　a/k/a "Dima," and<br>EDUARD PAKOYS,<br>　　a/k/a "Ed,"<br><br>　　　　　　　　Defendants. | **SEALED**<br>**SUPERSEDING INDICTMENT**<br><br>S2 26 Cr. 122 |

The Grand Jury charges:

## Overview

1.　From at least in or about 2018 through at least in or about 2023, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and others known and unknown, operated a criminal scheme that defrauded automobile insurance programs designed to provide health care benefits for motor vehicle accident victims out of millions of dollars (the "No-Fault Scheme"). PETROSYANTS, STOYANOVSKY, KHAVKO, PAKOYS, and others known and unknown agreed to and did submit fraudulent claims to the insurance programs for services that were never provided, services that were unnecessary and excessive, and services that were billed under the names of medical corporations that were not actually owned, operated, and controlled by licensed medical professionals, as required by New York State laws and regulations. To carry out the scheme, PETROSYANTS, STOYANOVKSY, KHAVKO, PAKOYS, and others

known and unknown agreed to and did (1) recruit purported physicians, psychologists, and other clinicians under whose names the fraudulent no-fault insurance claims were submitted, (2) prepare fraudulent no-fault insurance claims to obtain benefits from the automobile insurance companies, and (3) use the fraudulent claims to obtain payments representing a portion of the claim amounts through financing agreements with funding companies, including a funding company ("Funding Company-1") associated with a New York City law firm ("Law Firm-1"). PETROSYANTS, STOYANOVSKY, KHAVKO, and PAKOYS obtained millions of dollars through the No-Fault Scheme that they then laundered through various means, including using bank accounts held in the names of medical professionals, shell companies, and a law firm.

*Overview of No-Fault Motor Vehicle Insurance*

2.      At all times relevant to this Indictment, New York State law required every vehicle registered in New York State to have no-fault automobile insurance, which enabled the driver and passengers of a vehicle registered and insured in New York State to obtain benefits of up to $50,000 per person for injuries sustained in an automobile accident, regardless of fault (the "No-Fault Law"). The No-Fault Law required payments for medical treatments to be made promptly, thereby obviating the need for vehicle occupants (the "No-Fault Patients") to file personal injury lawsuits to be reimbursed for medical treatment. Under the No-Fault Law, the No-Fault Patients could assign their right to reimbursement from an insurance company to others, including, but not limited to, medical corporations that provided medical services to treat their injuries. If such an assignment were made, the medical corporations, or their agents, would bill the insurance company directly for services rendered and would receive payments directly from the insurance company.

3.      At all times relevant to this Indictment, pursuant to New York State law, all medical corporations in New York State were required to be owned, operated, and controlled by a licensed

2

medical professional to be eligible for reimbursement under the No-Fault Law. Insurance companies were permitted, pursuant to New York State Law, to deny all billings for medical treatments from a medical corporation that was not actually owned, operated, and controlled by a licensed medical professional.

*The No-Fault Scheme*

4.      ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and others known and unknown, agreed to and did carry out the No-Fault Scheme through multiple means. First, PETROSYANTS, STYOYANVOSKY, KHAVKO, PAKOYS, and others known and unknown, agreed to and did submit insurance claims on behalf of medical corporations (the "No-Fault Corporations") that were purportedly owned by licensed psychologists and medical professionals (the "No-Fault Providers") but were in fact owned, operated, and controlled by STOYANOVSKY, KHAVKO, and PAKOYS, and their co-conspirators, none of whom were licensed medical professionals. As the defendants knew, had the insurance companies known that the No-Fault Corporations were not owned, operated, and controlled by licensed medical professionals, the insurance companies would have denied payment for the submitted insurance claims.

5.      Second, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and their co-conspirators, agreed to and did cause claims to be submitted to insurance companies on behalf of the No-Fault Providers and No-Fault Corporations for medically unnecessary and excessive medical treatments and testing. In furtherance of those efforts, STOYANOVSKY, KHAVKO, PAKOYS, and their co-conspirators agreed to and did pay

3

kickbacks to a network of clinics (the "No-Fault Clinics") in and around New York City. In return for the kickbacks, the No-Fault Clinics permitted STOYANOVSKY, KHAVKO, PAKOYS, and their co-conspirators to send social workers and technicians ("No-Fault Clinic Workers") to the No-Fault Clinics to collect insurance information, personal information, and assignment of benefits forms from No-Fault Patients in order to file claims under no-fault insurance policies (the "No-Fault Claims") for services purportedly provided by the No-Fault Providers and No-Fault Corporations.

6.     To prepare the No-Fault Claims, VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and their co-conspirators arranged for the No-Fault Clinic Workers to be present at the No-Fault Clinics on particular dates.  While there, the No-Fault Clinic Workers administered a preselected series of expensive procedures to any No-Fault Patients who appeared, regardless of medical necessity. In other words, the procedures administered to the No-Fault Patients were not determined based on the judgment of a licensed professional, but were instead chosen by STOYANOVSKY, KHAVKO, PAKOYS, and their co-conspirators, to maximize the value of submitted insurance claims. Had the insurance companies known that the claims included medical testing and services that were not medically necessary, the insurance companies would have denied payment for the submitted claims.

7.     Third, after the No-Fault Clinic Workers administered diagnostic tests and other procedures, and gathered the information and forms needed to file No-Fault Claims, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and their co-conspirators, agreed to and did prepare bills submitted to insurance companies falsely claiming

4

that the services had been provided by the No-Fault Providers. In truth and in fact, however, the No-Fault Providers did not actually perform services for the No-Fault Patients; rather, the names and personal identifying information of the No-Fault Providers were inserted onto No-Fault Claims. Had the insurance companies known that the claims included medical services that were not actually rendered by the No-Fault Providers, the insurance companies would have denied payment for the submitted claims.

8.      At all times relevant to this Indictment, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and their co-conspirators, were aware that insurance companies had a practice of issuing requests for examinations under oath ("EUO") to No-Fault Providers suspected of submitting fraudulent claims. An EUO is a formal proceeding during which an attorney for an insurance company can question an insured or the provider that submitted a claim under oath regarding the validity of the insurance claim. During the No-Fault Scheme, PETROSYANTS, STOYANOVSKY, KHAVKO, PAKOYS, and their co-conspirators became aware of several EUO requests sent by insurance companies to the No-Fault Providers regarding certain No-Fault Claims. PETROSYANTS, STOYANOVSKY, KHAVKO, PAKOYS, and their co-conspirators, agreed to and did hide the EUO requests from the No-Fault Providers due to their concern that the No Fault Providers would provide damaging information during the EUOs, and instead arranged for certain co-conspirators to appear for the EUOs as purported representatives of the No-Fault Providers and provide false and misleading testimony.

*Funding Companies*

9.      While the No-Fault Law permits medical corporations, or their agents, to bill insurance companies directly for services rendered, it is a common practice for medical

5

corporations and professionals to use the services of a funding company. As a general matter, such funding companies provide financing to medical professionals by advancing such professionals a percentage of the face value of a batch of no-fault insurance claims. In exchange, funding companies are permitted to file those claims for payment on the professional's behalf and collect the full value of the claims from the insurance company.

10. ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," and EDUARD PAKOYS, a/k/a "Ed," the defendants, and their co-conspirators, used the services of funding companies to extract value from the No-Fault Claims. PETROSYANTS arranged for STOYANOVSKY, KHAVKO, PAKOYS, and others known and unknown, to use the services of a well-capitalized funding company, namely, Funding Company-1, affiliated with large New York-based law firm, Law Firm-1. PETROSYANTS, working with others affiliated with Funding-Company-1, secured financing agreements between several No-Fault Providers and Funding Company-1, and also obtained agreements under which Law Firm-1 submitted fraudulent No-Fault Claims to major insurance companies purportedly on behalf of the No-Fault Providers and No-Fault Corporations. PETROSYANTS knew that access to Funding Company-1 and Law Firm-1 gave both a veneer of legitimacy to the scheme participants' fraudulent No-Fault Claims and quick access to criminal proceeds through advances paid by Funding Company-1.

11. In exchange for securing financing from Funding Company-1 for the No-Fault Providers, ZHAN PETROSYANTS, a/k/a "Johnny," the defendant, received both a fee from Funding Company-1, as supposed compensation for referring the No-Fault Providers to Funding Company-1, as well as kickback payments from VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," and EDUARD PAKOYS, a/k/a "Ed," the defendants, and

their co-conspirators. PETROSYANTS received kickback payments representing a portion of the advances paid by Funding Company-1 to the scheme participants.

12. ZHAN PETROSYANTS, a/k/a "Johnny," the defendant, was aware that the kickbacks he was receiving were being paid in exchange for his facilitation of the No-Fault Scheme and that the claims being funded and submitted were fraudulent. Among other things, PETROSYANTS knew that the Provider Accounts were being used to funnel kickbacks to him without the awareness of the No-Fault Providers. Some of the kickback payments were paid to PETROSYANTS using blank, pre-signed checks drawn on accounts nominally controlled by certain of the No-Fault Providers. PETROSYANTS was aware that these checks were provided to him without the participation or consent of the No-Fault Providers because they were often filled out in PETROSYANTS's presence by one of the scheme participants, and without the involvement of the No Fault Providers.

13. In addition, ZHAN PETROSYANTS, a/k/a "Johnny," the defendant, was aware that funding payments were paid out to shell companies that were not, and did not purport to be, medical businesses. PETROSYANTS and a co-conspirator ("CC-1") caused Funding Company-1 to pay millions in advances on no-fault medical claims to two shell corporations named Sunstone Service Inc. ("Sunstone") and Blue Tech Supplies Inc. ("Blue Tech") between August 2021 and February 2022, and Funding Company-1 regularly sent PETROSYANTS wire confirmations reflecting those payments. Neither Sunstone nor Blue Tech is a provider of medical services and the bank accounts in their names that received Funding Company-1's advances were not controlled by a medical professional. Additionally, Sunstone and Blue Tech were merely used as conduits, as substantially all of the money that Sunstone and Blue Tech received from Funding Company-1 was then transferred to a bank account nominally held by a jewelry business based in the Diamond

7

District of midtown Manhattan.

14.     Additionally, DMITRIY KHAVKO, a/k/a "Dima," the defendant, created phony documentation purporting to show that Plutus Global, a company under KHAVKO's control, had served as a funding company for certain No Fault Claims, which KHAVKO and his co-conspirators referred to as "cherries," which could be filed against insurance companies reputed to be less likely to scrutinize and reject fraudulent claims (the "Cherry Claims"). In truth and in fact, however, Plutus Global provided no such advanced funding. KHAVKO used a personal injury law firm that specialized in no-fault litigation ("Law Firm-2") to submit Cherry Claims for payment to various insurance companies, and between 2018 and 2023, Plutus Global and KHAVKO each received payments via hundreds of checks from Law Firm-2, totaling over a million dollars.

15.     As a result of the No-Fault Scheme, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and their co-conspirators, caused insurance providers to be billed tens of millions of dollars in fraudulent claims.

*The Money Laundering Scheme*

16.     ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and their co-conspirators, purposefully concealed and disguised the nature, the location, the source, the ownership, and the control of the proceeds of the No-Fault Scheme by laundering the proceeds through accounts held in the names of the No Fault Providers, shell entities, and Law Firm-2.

17.     ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants,

and their co-conspirators, agreed to and did launder the proceeds of the No-Fault Scheme by exercising control over several bank accounts held in the names of the No-Fault Providers (the "Provider Accounts"). PETROSYANTS, STOYANOSKY, KHAVKO, PAKOYS and their co-conspirators directed payments from insurance companies, payments from law firms authorized to collect payment on the No-Fault Claims, and advances from the Funding Companies into several Provider Accounts, and then caused proceeds from the Provider Accounts to be disbursed to other bank accounts they controlled, some of which were held in the names of nominee owners. To do so, among other things, STOYANOVSKY, KHAVKO, PAKOYS, and their co-conspirators directed the No-Fault Providers to sign stacks of blank checks that could be used to disburse money from the Provider Accounts. Using blank, pre-signed checks to transfer proceeds out of the Provider Accounts, and accounts held in the names of nominees, allowed STOYANOVSKY, KHAVKO, PAKOYS, and their co-conspirators to conceal the nature, ownership, and control of the proceeds deposited into Provider Accounts.

18. Additionally, VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and their co-conspirators, laundered proceeds of the No-Fault Scheme through Plutus Global, a phony funding company controlled by KHAVKO. As described above in paragraph 14, KHAVKO caused Law Firm-2 to submit the Cherry Claims to insurance companies for payment, and Law Firm-2 returned proceeds to Plutus Global after collecting payments from the insurance companies. By having the proceeds from the fraudulent Cherry Claims transmitted to Plutus Global, a fake funding company, STOYANOVSKY, KHAVKO, and PAKOYS concealed the nature, ownership, and control of the proceeds.

9

**COUNT ONE**
**(Conspiracy to Commit Healthcare Fraud)**

**Statutory Allegations**

19. From at least in or about 2018 through at least in or about 2023, in the Southern District of New York and elsewhere, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and others known and unknown, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit healthcare fraud, in violation of Title 18, United States Code, Section 1347.

20. It was a part and an object of the conspiracy that ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and others known and unknown, knowingly and willfully, would and did execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of a health care benefit program in connection with the delivery of a payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347, to wit, PETROSYANTS, STOYANOVSKY, KHAVKO, and PAKOYS conspired with each other and with others to defraud health care benefit programs and to obtain money and property owned by, and under the custody and control of, health care benefit programs by submitting fraudulent no fault insurance claims.

(Title 18, United States Code, Section 1349.)

10

## COUNT TWO
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

21. The allegations set forth in paragraphs 1 through 18 of this Indictment are repeated and alleged as if fully set forth herein.

22. From at least in or about 2018 through at least in or about 2023, in the Southern District of New York and elsewhere, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

23. It was a part and an object of the conspiracy that ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, PETROSYANTS, STOYANOVSKY, KHAVKO, and PAKOYS conspired with each other and with others to defraud insurance companies by submitting fraudulent no fault insurance claims in order to obtain payment from the insurance companies, and used interstate and foreign wires in furtherance of that conspiracy.

(Title 18, United States Code, Section 1349.)

11

## COUNT THREE
### (Aggravated Identity Theft)

The Grand Jury further charges:

24. The allegations set forth in paragraphs 1 through 18 of this Indictment are repeated and alleged as if fully set forth herein.

25. From at least in or about 2018 through at least in or about 2023, in the Southern District of New York and elsewhere, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, PETROSYANTS, STOYANOVSKY, KHAVKO, and PAKOYS possessed, used, and transferred the personal identifying information, including signatures and license information, of medical professionals during and in relation to the health care fraud conspiracy charged in Count One of this Indictment and the wire fraud conspiracy charged in Count Two of this Indictment, and aided and abetted the same.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## COUNT FOUR
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

26. The allegations set forth in paragraphs 1 through 18 of this Indictment are repeated and alleged as if fully set forth herein.

27. From at least in or about 2018 through at least in or about 2023, in the Southern District of New York and elsewhere, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a

12

"Ed," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

28.     It was a part and an object of the conspiracy that ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, and others known and unknown, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit health care fraud, in violation of Title 18, United States Code, Section 1347, and wire fraud, in violation of Title 18, United States Code, Section 1343, committed in connection with laundering the proceeds of the No-Fault Scheme alleged herein, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

29.     As a result of committing the offense alleged in Count One of this Indictment, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all property, real or personal, that constitutes or is derived, directly or indirectly, from gross

proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

30. As a result of committing the offense alleged in Count Two of this Indictment, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

31. As a result of committing the offense alleged in Count Four of this Indictment, ZHAN PETROSYANTS, a/k/a "Johnny," VLADISLAV STOYANOVSKY, a/k/a "Vlad," DMITRIY KHAVKO, a/k/a "Dima," EDUARD PAKOYS, a/k/a "Ed," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

### Substitute Assets Provision

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

     a.     cannot be located upon the exercise of due diligence;

     b.     has been transferred or sold to, or deposited with, a third person;

     c.     has been placed beyond the jurisdiction of the Court;

14

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

████████████

FOREPERSON

JAY CLAYTON
United States Attorney